## Palethorp *versus* Bergner and Muehleck.

1. A testator gave to his wife all the income of his real and personal estate, so long as she remained his widow, for the support of herself and maintenance, &c., of his children during minority; and what she might save after supporting the children, to her sole benefit to do with as she chose: he also empowered his executors (of whom she was one), if it would increase the income, to sell the real estate. *Held,* that the wife took but a life estate.

2. The contingent power to the executors to sell, did not enlarge her estate.

3. The widow made an agreement with the defendants to rent a house of the testator for five years "with privilege of a ten years' lease," provided all improvements, &c., be done by the lessee, he to bring out the building to the line of the street, &c. *Held,* that the lessee could make the improvements at any time during the lease.

4. Declarations by the lessee that he would not make the extension at all, were not a breach of the contract.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit* by Angelina Palethorp, trustee of the estate of John H. Palethorp, deceased, against Gustavus Bergner and Christian Muehleck, trading as Bergner & Muehleck, for failure to comply with the agreement hereafter given.

Palethorp, the decedent, died seised of the "Military Hall," in Library street, Philadelphia. At his death the property was in possession of Christian Heishley, as a tavern, under a lease

[Palethorp *v.* Bergner.]

from the decedent, which would expire June 30th 1870, and which the tenant could not assign without consent of the landlord. The building stood back from the line of the street. Mr. Palethorp died in November 1860, leaving a will, containing, amongst others, the following provisions:—

" I give unto my beloved wife all the bank and other dividends, incomes of my real and personal estate, so long as she remains my widow, to be applied by her to the support of herself, and the support, maintenance and education of my children during their minority, and whatsoever she may save out of the same, giving the said children a proper support and education, I give unto her for her sole and separate use and benefit, to do with as she chooses. * * I authorize and empower my said wife to receive the said rents, dividends and incomes, and give her own receipt for the same, she keeping the said real estate in good repair, paying the interest and the taxes punctually on the same. * * * But if my said executors find, by disposing of any of my real or personal estate, that it will be increasing the incomes of said estate, and my youngest child is not yet arrived at the age of twenty-one years, then I hereby empower them so to sell such property, but the price so obtained from such sale must be immediately invested in good bonds and mortgages, or such property as the court approves of, or said sale shall be null and void." * * * *

He appointed his wife, Angelina, trustee and executor, and his children, Angelina W., Robert, and John H. Palethorp, executors of his will.

Bergner, having bought Heishley's interest in the lease, on the 2d of March 1863, received the following agreement from Mrs. Palethorp:—

" I agree to rent Mr. Bergner the Military Hall, for five years, commencing March 1st 1863, at the rate of eighteen hundred dollars per year, with the privilege of a ten years' lease at the same rent, provided all improvements, repairs, and water-rents, with extra insurance, is paid and done by said Bergner. The said rent is to be paid the first day of each and every month. The said Bergner is to bring the two first stories out to the line which the Mercantile Library is on, and give a written agreement for the said faithful performance of all contained therein.

"A. PALETHORP."

The right to bring out the building was claimed under the 19th section of an act authorizing the vacation of part of Library street, with the consent of the Mercantile Library Company.

On the next day Heishley assigned his lease to Bergner, with the assent of the executors. Muehleck was partner with Bergner, and the agreement, &c., were for the use of the firm. There were numerous interviews, and much correspondence between the parties and their counsel as to carrying out the agreement—Mrs.

[Palethorp *v.* Bergner.]

Palethorp demanding that the defendants should make improvements not expressed in the agreement; to give her a bond in $5000, as liquidated damages in case of non-performance of what she required, one of its conditions being that the extension should be made in five months. This was declined by defendants. The defendants desired Mrs. Palethorp to give her written consent to their bringing out the building to the line of Library street as it would be by the vacation. This she declined to do, but demanded a new lease, which the defendants declined to give. The defendants put a new front to the house on the old line.

The declaration recited the agreement, and the defendants' possession under it; averred that, " in fraud" of it, they had refused to give a " written agreement for the faithful performance of the matters and things contained in it, and bring the two first stories . . . out to the line" of the Mercantile Library building ; and other breaches.

The Court, Stroud, J., charged that the plaintiff did not appear to have had at any time an estate in the Military Hall property beyond her natural life, and that under the agreement which had been given in evidence, and which, for the purpose of this case, might be regarded as a lease, the defendants were not bound to make the improvements within any shorter period than the ten years mentioned in it.

There was a verdict for the defendants.

The errors assigned were, that the Court charged:—

1. That Mrs. Palethorp had but a life estate in the property.

2. That the defendants were not bound to make the improvements within a shorter period than ten years.

*R. Palethorp* and *G. W. Wharton*, for plaintiff in error.

1. Whether the estate of Mrs. Palethorp was for life or more, was immaterial, and calculated to mislead the jury.

2. The lease was for five years, with right to renew for five more if the improvements were made, the utmost term for doing which was five years ; this was annulled by the acts and declarations of the defendants, amounting to a repudiation of the agreement, and thus precluded themselves from averring an intention of future performance. The construction of a contract must be reasonable, and agreeable to common understanding: 2 Bl. Com. 379 ; Schuylkill Navigation Co. *v.* Moore, 2 Wharton 491 ; Snyder *v.* Levengood, 4 Barr 308 ; Sergeant *v.* Ingersoll, 7 Id. 347 ; Campbell *v.* Gates, 10 Id. 483 ; Steiner *v.* Gower, 3 W. & S. 136 ; Hess *v.* Heeble, 6 S. & R. 57. The court would construe the time in the agreement to mean a reasonable time : Roberts *v.* Berry, 17 Eng. L. and Eq. R. 400.

*G. W. Thorn* and *W. S. Price*, for defendants in error.

[Palethorp *v.* Bergner.]

1. The remark as to Mrs. Palethorp's estate was immaterial in view of his binding instruction in regard to the time of making the improvements. But the remark was well founded.

2. The defendants were entitled to the premises till 1870 under Heishley's lease. The time in which to make the improvement was ten years. But if to be done in five years, if not done, the penalty for failure was to lose the right of renewal.

The opinion of the court was delivered, August 2d 1866, by

STRONG, J.—The 1st assignment of error would be of no importance were it sustained, for the language of the judge, to which exception is taken, could not have affected the verdict. Had the plaintiff's estate in the demised premises been declared a fee simple, the result of the trial must have been the same. It was, however, strictly accurate for the judge to say that the plaintiff's interest in the Military Hall did not extend beyond an estate for her natural life. The contingent power of sale given to the executors of her husband's will did not enlarge her estate in the lands and convert that which, without the power, is expressly a life estate into a greater interest.

And the 2d assignment of error has no better foundation. The plaintiff builds her right to maintain this action upon the assumption that the defendants are in possession as her lessees under the agreement without date, but proved to have been made on the 2d of March 1863. By that she agreed to rent the property to Mr. Bergner for five years, commencing March 1st 1863, at the rate of $1800 per year, with the privilege of a ten years' lease at the same rent, provided all improvements, repairs and water rents, with extra insurance, were paid and done by the lessee. The agreement also stipulated that the rent should be paid on the first day of each month, and that Bergner should bring the first two stories out to the line which the Mercantile Library building is on, and that he should give a written agreement for faithful performance of all "contained therein;" that is, of the obligations imposed on the lessee. It is for a failure thus to bring out the building demised, and to give an agreement for faithful performance, that this action is brought. The defendants insist that they hold as assignees of one C. Heishley, who had a lease at the same rent extending until June 13th 1870, assigned by Heishley to them with the assent of the plaintiff.

It is not necessary now to decide which of the parties is right. Conceding for the purposes of this case that the assumption of the plaintiff is well made, that the agreement of March 1863 is itself a lease, and that the defendants are in under it, still no time is fixed for bringing the first two stories out to the line of the Mercantile Library building. Doubtless it must be construed as imposing an obligation to make the improvement at some time

[Palethorp v. Bergner.]

during the term, but there is no engagement to make it at the beginning of the term rather than at its close. It is obvious that the lessor has no interest in having the work done at the commencement, or at any time in the term, provided the property is returned to her with the extension completed. As she is to pay the taxes, the improvement, if made early, would tend to increase her burdens without any corresponding increase of the rent, and she would receive the property at the end of the term impaired by the use of the improvement instead of receiving it now. The contract must, indeed, receive a reasonable construction; but if the extension be made at the beginning, that construction is unreasonable which imposes an increased burden upon one party, and one not expressly undertaken, without any benefit to the other. Here the possession was given to the defendants for a certain period, the lessor having no interest in the improvement stipulated to be made except as benefiting her reversion, and as no time was prescribed within which they were to be made, the obligation reaches no farther than to make the extension during the term at any time. It is not demanded by this case that we should decide whether the lessees have ten years or only five within which to make the alteration, for the action was brought long before the first five years expired. The contract of the lessees was not therefore broken at that time; and even if the court below was in error in charging the jury that the defendants were not bound to make the improvement in a shorter period than ten years, a correction of the error would not help the plaintiff.

It has been argued, however, that the acts and declarations of the defendants, as proved by the evidence, amount to an avowal of a purpose not to make the extension at any time. Suppose this be conceded, it does not help the plaintiff nor show any error in the record. It is not easy to see how such an avowal can amount to a breach of the contract. The defendants may repent before the time shall come when they are bound to do the work; and if they do not, the plaintiff will not be injured until that time. It certainly would be a novelty to allow a promissee to maintain an action for the non-payment of a debt or the non-performance of any contract before the time stipulated for the payment or performance, merely because the promissor had declared a purpose not to pay or perform. Besides, upon this subject, the court gave no instruction. None appears to have been asked, and no assignment of error raises any question respecting the effect of the defendants' conduct or avowals.

As this part of the case was pressed on the argument, it may be well to look at it more minutely. It was in evidence and uncontradicted that in March 1863, shortly after the agreement to lease to Bergner was made, the defendants offered to give a bond in accordance with the agreement. The bond was not accepted,

[Palethorp *v.* Bergner.]

but it was insisted that Bergner should sign an agreement binding him to much harder terms, among which were the stipulations that he should put in a large number of marble basins, that he should make the extension of the building out to the line within five months, and that he should agree to a liquidation of damages for non-performance in the sum of $5000. He was under no obligation to assent to such terms. And yet to nothing else would the plaintiff assent. She would not even sign a written consent that the defendants might extend the improvements of the building out to the line. It was not until after she had made and persisted in these unwarranted demands, and even to consent to the extension of the building, that the defendants did or said anything to indicate an unwillingness to make the required improvement. In the face of all this it is not to be declared as a legal proposition that they have broken their contract, much less that their conduct has altered it, and that they have now become liable to perform an engagement to extend the building sooner than they were required to do by the words of the agreement.

There is no error in the record.

Judgment affirmed.